**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMMY JEROME KIMP, | |
| Plaintiff, | No. 1:22-CV-01369 |
| v. | Judge Edmond E. Chang |
| BONNIE NOWAKOWSKI and SARAH HOWELL, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Timmy Kimp, a federal prisoner, brings this lawsuit against two employees of the Bureau of Prisons: Dr. Bonnie Nowakowski and Correctional Officer Sarah Howell.[1] R. 31, Second Am. Compl. at 2.[2] Kimp alleges that Nowakowski and Howell refused to relieve him from his prison job assignment and thus subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment. *Id.* ¶¶ 12–14. The Defendants move to dismiss, arguing primarily that Kimp's claims would require an impermissible extension of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). R. 90, Defs.' Mot. For the reasons explained below, the Court grants the Defendants' motion and dismisses Kimp's Second Amended Complaint for failure to state a claim.

---

[1]This Court has federal-question jurisdiction over this case. 28 U.S.C § 1331.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in Kimp's Second Amended Complaint and draws all reasonable inferences in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

In April 2020, while detained at the Metropolitan Correctional Center in Chicago, Kimp was assigned to a work detail with the Environmental Safety Compliance Department. Second Am. Compl. ¶ 1. Kimp asked Dr. Nowakowski, his chronic-care doctor, to issue him a "lay-in" from his work assignment because his underlying medical conditions (asthma and Type 2 diabetes) put him at substantial risk of harm if he contracted COVID-19. *Id.* ¶¶ 1–2. Dr. Nowakowski issued him a temporary lay-in for a few days. *Id.* ¶ 2. But when Kimp told her that he needed a long-term lay-in until the spread of COVID-19 was under control, Dr. Nowakowski denied his request because he was not sick yet; Kimp thus had to work or risk disciplinary sanctions. *Id.* ¶¶ 2–3.

After his temporary lay-in expired, Kimp reported back to work. Second Am. Compl. ¶ 4. Kimp told his work supervisor, Officer Howell, that he pursued a long-term lay-in and explained how his underlying conditions placed him at greater risk of contracting COVID-19. *Id.* But Howell told Kimp that, because his lay-in expired, he had to continue his job. *Id.* Kimp alleges that Officer Howell then assigned him to "arguably the most hazardous duties," including cleaning and disinfecting cells where prisoners quarantined after testing positive for COVID-19. *Id.* ¶ 5.

2

Later that month, Officer Howell told Kimp that he was designated for transfer to a different facility and that, prior to his transfer, he would have to train other prisoners on how to use the chemicals and safety equipment required for the job. Second Am. Compl. ¶ 6. Kimp then tried to confirm that he was medically cleared for transfer, but Dr. Nowakowski said that she would let him know and never did. *Id.* Nowakowski also did not physically examine Kimp or ask if he was exhibiting COVID-19 symptoms before his transfer. *Id.*

When Kimp boarded the bus for transfer to USP-Thomson, he notified Lieutenant Burns, the bus driver, that he did not feel well. Second Am. Compl. ¶ 7. Burns told Kimp that Dr. Nowakowski had medically cleared him for transport. *Id.* Upon arriving at USP-Thomson, Kimp tested positive for COVID-19 and was placed in quarantine isolation. *Id.* A few months later, Kimp was transferred to USP-Marion, where he again tested positive for COVID-19. *Id.* ¶¶ 7–8. He was sent to a quarantine cell and later to a suicide isolation unit that had little to no ventilation and thus was "extremely hot" and "unbearably humid." *Id.* ¶¶ 8–9. As a result, Kimp suffered almost-daily asthma attacks and heat exhaustion. *Id.* ¶ 9. At one point, Kimp asked officials why he was subjected to these conditions and tested so frequently for COVID-19, and he was told that he was a "study case based on the reports and recommendations from MCC-Chicago." *Id.* ¶¶ 9–10. Kimp alleges that he has suffered long-lasting effects from his COVID-19 infection. *Id.* ¶ 11.

Kimp seeks to recover from Dr. Nowakowski and Officer Howell for deliberate indifference to his serious medical needs by exposing him to a hazardous work

3

assignment, knowing that he was at a greater risk of serious harm if he were to contract COVID-19 because of his underlying conditions. Second Am. Compl. ¶¶ 12–13. The Court recruited pro bono counsel for Kimp. R. 75, 01/22/25 Minute Entry.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The Defendants move to dismiss the complaint on three grounds: (1) Kimp's claim relies on an impermissible extension of *Bivens*, a case in which the Supreme Court authorized damages suits against federal officers for certain Fourth Amendment violations; (2) the Defendants are entitled to qualified immunity; and (3) Kimp's claim against Howell is barred by the statute of limitations. R. 93, Defs.' Br. at 1.

The threshold question is whether Kimp has a valid cause of action under *Bivens*. In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officials in their individual capacities for certain Fourth Amendment violations. 403 U.S. at 397; *see also Watkins v. Mohan*, 144 F.4th 926, 933 (7th Cir. 2025), *petition for cert. filed*, 25-952 (Feb. 11, 2026). But the Supreme Court has recognized a *Bivens* remedy in only three contexts: (1) a Fourth Amendment claim for an unlawful search and seizure, *Bivens*, 403 U.S. at 389; (2) a Fifth Amendment claim for workplace sex discrimination, *Davis v. Passman*, 442 U.S. 228, 230–31 (1979); and

5

(3) an Eighth Amendment claim for inadequate prison medical care, *Carlson v. Green*, 446 U.S. 14, 17–19 (1980). *Snowden v. Henning*, 72 F.4th 237, 238–39 (7th Cir. 2023). Since recognizing *Bivens* actions in those three specific contexts, the Court has declined to extend *Bivens* to other constitutional violations and generally disfavors expansion into new contexts. *Egbert v. Boule*, 596 U.S. 482, 490–92 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

The Supreme Court has created a two-step framework to determine whether a *Bivens* action may proceed. *Snowden*, 72 F.4th at 239. First, a court must ask whether the plaintiff's claim arises in a new *Bivens* context. *Id.* "The context is new if the claim is different in a meaningful way from an earlier *Bivens* claim authorized by the Court." *Id.* (cleaned up). Although there is no exhaustive list of meaningful differences, the Supreme Court has identified some examples:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. "If the context is not new, then the claim may proceed." *Snowden*, 72 F.4th at 239. On the other hand, a new context requires the second-step inquiry whether "'special factors' counsel against" extending *Bivens*. *Id.* (quoting *Ziglar*, 582 U.S. at 136). A court cannot extend *Bivens* if "there is *any* rational

reason … to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 496 (cleaned up).

Because Kimp alleges that he received constitutionally inadequate medical care in a federal prison, both parties agree that *Carlson* is the most parallel case. Defs.' Br. at 6–7; R. 94, Pl.'s Resp. at 4. But *Carlson* ultimately does not help Kimp because his claims are meaningfully different from *Carlson* in three ways.

First as to Officer Howell, the rank of officer involved: *Carlson* concerned a chief medical officer and a medical training assistant who allegedly provided constitutionally deficient medical care in response to a prisoner's asthma attack. 446 U.S. at 16 n.1; *Green v. Carlson*, 581 F.2d 669, 671, 676 (7th Cir. 1978); *see also Skyberg v. James*, 2025 WL 1672871, at *2 (7th Cir. June 13, 2025). The Seventh Circuit, however, has recognized a meaningful difference where a prisoner sues "a non-medical prison counselor" like Howell. *Skyberg*, 2025 WL 1672871, at *2. Dr. Nowakowski, on the other hand, does not have a meaningfully different rank than the defendants in *Carlson*. *Cf. Brooks v. Richardson*, 131 F.4th 613, 615 (7th Cir. 2025) (recognizing that treating staff, the Bureau's Director, and local medical supervisors all fall within *Carlson* context).

Second, the official action in dispute is meaningfully different. Kimp alleges that the Defendants failed to *prevent* an illness, Second Am. Compl. ¶¶ 12–13, but *Carlson* recognized a cause of action under *Bivens* where the defendants allegedly failed to *treat* an illness, *see* 446 U.S. at 16 n.1. To be sure, the Seventh Circuit has recognized that *Carlson* "dealt with management of a chronic, non-emergent medical

condition requiring continuous, periodic treatment over many months …." *Watkins*, 144 F.4th at 936. But even construing Kimp's complaint—which he filed pro se— liberally, *Erickson*, 551 U.S. at 94, Kimp alleges only that the Defendants' failure to issue a lay-in had medical consequences, not that Dr. Nowakowski mistreated an on-going medical condition.[4] Second Am. Compl. ¶ 12. Kimp does also assert that Nowakowski refused "to medically treat" him, but he never alleges how. *Id.* And he does not, for example, allege that he told Nowakowski about any COVID-19 symptoms before being transferred. *Id.* ¶¶ 6–7.

Even if Kimp's conditions-of-confinement claim were not meaningfully different from *Carlson*, Kimp's suit presents another meaningful difference: "disruptive intrusion by the Judiciary into the functioning of other branches." *Ziglar*, 582 U.S. at 140. Kimp's claim centers on the Defendants' refusal to relieve from his work assignment, despite his underlying medical conditions. Second Am. Compl. ¶¶ 2–4, 12–13. Although *Carlson* approved of some intrusion into the functioning of federal prisons, *see Watkins*, 144 F.4th at 936–37, Kimp's claim implicates not just medical care but also his work assignment. *Cf. Sargeant v. Barfield*, 87 F.4th 358, 367 (7th Cir. 2023) (concluding that failure-to-protect claim "will invariably implicate housing policies … in ways *Carlson* did not contemplate"). And Kimp did not ask for medical care

---

[4]On a more granular level, Kimp's claim concerns the "conditions of [his] confinement, not the adequacy of his medical care." *Skyberg*, 2025 WL 1672871, at *2. Although both issues implicate the Eighth Amendment, courts treat conditions claims as raising a meaningful difference compared to *Carlson. See, e.g., Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) ("[T]he basis of [the] claim … resembles the conditions of the confinement claim the Supreme Court rejected in *Abbasi*.").

8

that had downstream effects on "general administrative and scheduling concerns," *Watkins*, 144 F.4th at 936–37 (cleaned up), but instead sought principally an adjustment to his work assignment that he alleges had follow-on consequences for his health. The Supreme Court has warned that courts "likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*," which alone is a factor that should require dismissal. *Egbert*, 596 U.S. at 493 (cleaned up).

Having concluded that Kimp's claim arises in a new context, the Court must determine "whether there are any special factors that counsel hesitation" in extending *Bivens*. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (cleaned up). This part of the test weighs against implying a damages remedy. *Snowden*, 72 F.4th at 241–42. If Congress provides an alternative remedial structure, "that alone" is enough to counsel against implying a new cause of action. *Egbert*, 596 U.S. at 493. Here, the existence of the Bureau's Administrative Remedy Program weighs against implying a new cause of action.[5] *Skyberg*, 2025 WL 1672871, at *2–3; *DeBenedetto v. Salas*, 2023 WL 6388127, at *7 (N.D. Ill. Sep. 29, 2023) (detailing potential availability of injunctive

---

[5]The Bureau's Administrative Remedy Program was established in 1974, pre-dating *Carlson*. *Compare* Warren Weaver Jr., *Grievance Procedure Is Set Up in U.S. Prisons to Curb Lawsuits*, N.Y. TIMES, May 6, 1974, at 30, *and* J. MICHAEL KEATING, JR. ET AL., TOWARD A GREATER MEASURE OF JUSTICE A-1 (1975), https://www.ojp.gov/pdffiles1/Digitization/19594NCJRS.pdf, *with Carlson*, 446 U.S. at 14 (noting decision in 1980), *and Green*, 581 F.2d at 671 (detailing factual background beginning principally in 1975). Although *Carlson* explained why the Federal Tort Claims Act did not preclude the availability of a judicial remedy, 446 U.S. at 19–23, the Supreme Court did not address the Administrative Remedy Program. But despite the timeline of events, the Program is a "special factor[] that [a] previous Bivens case[] did not consider," *Ziglar*, 582 U.S. at 139–40, so courts have concluded that its existence weighs against implying a new cause of action, *see, e.g.*, *Skyberg*, 2025 WL 1672871, at *2–3; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

relief, writ of habeas corpus, and Administrative Remedy Program as constituting special factors that preclude a *Bivens* cause of action). Whether or not the program was inadequate or unavailable is immaterial; the Court considers only "whether there is a reason why Congress is better positioned to assess the need for a remedy, not whether that remedy is functionally available." *Skyberg*, 2025 WL 1672871, at *3 (citing *Sargeant*, 87 F.4th at 368).

Because Kimp cannot state a valid cause of action under *Bivens* against Dr. Nowakowski or Officer Howell, the Court does not reach the issues of qualified immunity or the statute of limitations.

## IV. Conclusion

The Defendants' motion to dismiss the Second Amended Complaint, R. 90, is granted. Because Kimp has already amended the complaint and because there is no reason to believe that he can sufficiently allege a valid cause of action under *Bivens*, the dismissal is with prejudice. Final judgment will be entered. The Court expresses its gratitude to recruited counsel for their able service in providing pro bono representation to a client who otherwise would have gone without assistance.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2026

10